IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| VIRGIL TREECE, | ) Civil Action No. 3:08-3524-DCN-JRM |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| CHAD LOMINICK, PROGRAM DIRECTOR; | ) **REPORT AND RECOMMENDATION** |
| PAULA PRINCE, WORK PROGRAM | ) |
| COORDINATOR; AND | ) |
| BRYANT MORTON, ACTIVITIES THERAPY | ) |
| SUPERVISOR, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Plaintiff, Virgil Treece, filed this action pursuant to 42 U.S.C. § 1983 on October 20, 2008.[1] He is involuntarily committed to the Sexually Violent Predator Treatment Program ("SVPTP") at the South Carolina Department of Mental Health ("SCDMH") as a Sexually Violent Predator ("SVP") pursuant to the South Carolina SVP Act, S.C. Code Ann. § 44-48-10 et seq. Defendants, all SCDMH employees, are Program Director Chad Lominick ("Lominick"); Work Program Coordinator Paula Prince ("Prince"); and Activities Therapy Supervisor Bryant Morton ("Morton"). On April 24, 2009, Defendants filed a motion for summary judgment. Plaintiff, because he is proceeding pro se, was advised on April 27, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on May 13, 2009, and Defendants filed a reply on May 20, 2009.

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(e), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

**MOTION FOR DEFAULT**

On January 21, 2009, Plaintiff filed a motion for default pursuant to Federal Rule 55. He argues that Defendants failed to plead or otherwise defend, and failed to answer the Complaint because their answer "is a Mixed Petition and not consistent to FRCP." Defendants did not file a response.

On January 9, 2009, Defendants timely[2] filed an answer. In their answer, they specifically assert various defenses. Contrary to Plaintiff's assertion, Defendants filed an answer rather than a motion to dismiss.[3] It is clear that Defendants have appeared and defended this action. It is, therefore, recommended that Plaintiff's motion for default be denied.

**MOTION FOR SUMMARY JUDGMENT**

Plaintiff alleges that Defendants violated his due process and equal protection rights by not posting the job of resident activity therapy ("AT") worker. Defendants contend that their motion for summary judgment should be granted because: (1) they are entitled to Eleventh Amendment immunity; (2) Plaintiff fails to state a claim; (3) Defendants Lominick and Prince cannot be held liable on a theory of respondeat superior;[4] (4) Defendants are entitled to qualified immunity; (5)

---

[2] In an order issued December 19, 2008, the undersigned extended the deadline for Defendants to answer until January 12, 2009.

[3] Even if Defendants had filed a motion to dismiss under Rule 12, that would not have put Defendants in default. Rule 12(a)(4) alters the standard period when a Rule 12 motion is filed to allow the defendant to file an answer within 10 days of receiving notice of the court's action with respect to the Rule 12 motion.

[4] The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware
(continued...)

Plaintiff fails to set forth evidence which would justify the granting of any declaratory relief; and (6) Plaintiff fails to show any actual or threatened violation of his constitutional rights such that any claim for injunctive relief should be denied.

### 1.     **Fourteenth Amendment Due Process**

Plaintiff appears to allege that he was denied due process because the job opening for the AT worker position was not posted. Defendants contend that Plaintiff fails to establish a due process claim because he has not shown that he had a liberty or property interest in the AT worker job.

Specifically, Plaintiff claims that on August 8, 2007, he applied for a job through the work incentive program and was advised by Sheila Lindsey that he was required to apply for jobs and be interviewed by work program coordinator Ms. Amaker. He alleges that he asked Defendant Morton on October 23, 2007 to hire him as an AT worker if he applied for the job. He states that Morton informed him that the job was not available at the time, but Plaintiff could apply when the position came open. On August 4, 2008, Morton announced that another SVP Resident (hereafter referred to as "Resident X") was hired for the job.

Morton states that he oversees the activities the SVPTP residents participate in as part of their treatment. An SVPTP resident is employed as a resident AT worker and the job consists of assisting in the coordination, organization, and running of the activities. Morton states that prior to August 2008, a resident employed as the resident AT worker was unable to properly perform his job due to health issues; Resident X had been assisting with the duties voluntarily without pay; a more suitable

---

⁴(...continued)
of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

job was found for the resident AT worker with health issues; and Morton suggested to the treatment team that Resident X be offered the position because Resident X had already been voluntarily doing the job. Morton Aff.

The Due Process Clause applies when government action deprives an individual of a legitimate liberty or property interest. See Board of Regents v. Roth, 408 U.S. 564, 570 (1972). Thus, the first step in analyzing a procedural due process claim is identifying whether the alleged deprivation impacts such a protected interest. See Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997); Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 634 (4th Cir.1996).

Plaintiff fails to show that he has a protected liberty or property interest in the AT worker job (or having the position posted). Defendant Price states that she is responsible for assisting residents in job assignments. She provides that SCDMH policies and procedures regarding paid employment for residents of the SVPTP are set forth in the SCDMH Division of Health Policy and Procedure Directive No. RI 1, "Paid Work Program for Patients/Residents" (referred to as the "Directive"). Prince Aff., Paras. 3 and 4. Review of this policy reveals no provision requiring posting of jobs. See Directive (Doc. 34). Price states that "[n]either the Directive nor state law requires that the jobs offered through the Paid Work Program be posted, as they are temporary jobs." Price Aff., Para. 6. Other courts that have addressed this issue have found that civilly committed persons do not have a protected liberty or property interest in a job. See Allen v. Mayberg, 2008 WL 5135629 (E.D. Cal. 2008)(noting that a SVP resident did not have a liberty interest in vocational placement or a property interest in a job); Elliott v. Baker, 2008 WL 4876871 (N.D. Ill. 2008)(Stating that the federal Constitution does not require state authorities to provide convicted prisoners with vocational

4

opportunities and noting that "[t]he Court is unaware of any authority, nor does [plaintiff] cite any, suggesting that the rules are different for civilly committed persons.").

In his opposition memorandum, Plaintiff for the first time appears to allege that he has a protected liberty or property interest in advancing to the AT worker job because having that job might allow him to be released sooner from the SVPTP. He has, however, provided nothing to show that his release is tied to such a job or disputed that he continued to participate in the job program. Prince provides that Plaintiff has been employed since October 17, 2007, and he received a position with additional hours of work in August 2008. Prince Aff., Para. 8.

### 2. Equal Protection

Plaintiff appears to allege that his equal protection rights were violated because a black SVPTP resident was given the job of AT worker and "Morton has only hired blacks as far as the plaintiff is aware..." Complaint at 6. Defendants contend that Plaintiff fails to establish an equal protection claim because he has not shown that he was treated any differently than any other resident in a situation similar to him, and he fails to show that any unequal treatment he experienced was due to "intentional or purposeful discrimination." Morton denies that he discriminated against Plaintiff. See Morton Aff., Paras. 9-10.

An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the

constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. See Turner v. Safley, 482 U.S. 78, 89 (1987).

Plaintiff fails to allege any specific acts or omissions on the part of Defendants sufficient to state a claim of unlawful racial discrimination. Plaintiff merely makes unsubstantiated statements that ninety members of the SVPTP staff are African American and African-American SVPTP residents receive preferential treatment. See Plaintiff's Opp. Mem. at 3-4. Plaintiff has not shown that he is similarly-situated to Resident X or that the alleged unequal treatment was the result of intentional discrimination.

### 3.     ADA

In his Complaint, Plaintiff alleges that he "was denied his clearly established rights for equal opportunity employment under the Americans with Disabilities Act..." Defendants contend that Plaintiff fails to establish a claim under the ADA because: (1) he has not identified any specific disability that is the basis of discrimination by Defendants; (2) he cannot establish that he was excluded from employment within the SVPTP; and (3) has not established that he was excluded from employment within the SVPTP based on a disability.

In order to establish a prima facie case of failure to hire under the ADA, the plaintiff must prove by a preponderance of the evidence that: (1) he is within the ADA's protected class; (2) he applied for the position in question; (3) he was qualified for that position; and (4) the defendants rejected his application under circumstances that give rise to an inference of discrimination. See

Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 258 (4th Cir. 2006); Brown v. McLean, 159 F.3d 898, 902 (4th Cir.1998).

Plaintiff fails to establish a claim under the ADA because he has not shown that he has a "disability" under the ADA and thus cannot show that he is within the ADA's protected class. Under the ADA, disability[5] is defined as:

> (A)   a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B)   a record of such an impairment; or
>
> (C)   being regarded as having such an impairment....

42 U.S.C. § 12102(1). "A physical impairment, standing alone, is not necessarily a disability as contemplated by the ADA. The statute requires an impairment that substantially limits one or more of the major life activities." Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 726 (5th Cir. 1995). "Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2 (i). "Substantially limits" is defined as:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

---

[5]The question of whether a plaintiff is disabled under the ADA, "and therefore can bring a claim under the statute, is a question of law for the court, not a question of fact for the jury." Rose v. Home Depot U.S.A., Inc., 186 F.Supp.2d 595 (D.Md. 2002) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) (Rehabilitation Act case)).

7

29 C.F.R. § 1630.2 (j)(1). The ADA regulations specify three factors relevant in considering whether an impairment substantially limits a major life activity: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2); see also Bolton v. Scrivner, 36 F.3d 939, 943 (10th Cir. 1994), cert. denied, 513 U.S. 1152 (1995).

In his Complaint, Plaintiff did not allege that he had a physical or mental impairment. In his memorandum in opposition to Defendants' motion for summary judgment, Plaintiff for the first time alleges that he has the impairment of dyslexia. In support of his claim, Plaintiff merely asserts that Defendants knew about his dyslexia because it is charted in his medical file. Plaintiff's Opp. Mem. a 3. Plaintiff fails, however, to show that his impairment substantially limits one or more of his major life activities.

Even if Plaintiff could show that he has a "disability" under the ADA, he fails to show that Defendants rejected his application under circumstances that give rise to an inference of discrimination. Plaintiff appears to argue that he had applied for the job because he asked Defendant Morton in October 2007 to consider him if he applied for the job. Morton states that the first time he was aware of Plaintiff's interest in the position was at the meeting at which he announced that Resident X had been hired. Prince states that she was not aware the Plaintiff was interested in the position of resident AT worker prior to Resident X being hired for the position in August 2008. Prince Aff., Para. 11. Even if Plaintiff applied for the job, he fails to show that Defendants rejected his application under circumstances that give rise to an inference of discrimination. Plaintiff admits that "[i]t is unknown if the Dyslexia was the reason for not allowing plaintiff the opportunity for

advancement." Plaintiff's Opp. Mem. at 3. Plaintiff appears to argue that Resident X was less qualified than him for the job in terms of reading skills, educational skills, and disciplinary actions, but has provided nothing but his own opinion to support this assertion.

### 4. Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity in their official capacities. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to the Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are

entitled to Eleventh Amendment immunity from monetary damages in their official capacities. Defendants also contend that they are entitled to qualified immunity in their individual capacities. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Id. at 818.

The Court of Appeals for the Fourth Circuit, discussing qualified immunity, stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff has failed to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

## MOTION TO DISMISS

On April 7, 2009, Plaintiff filed a motion to dismiss this action without prejudice so that he can exhaust his administrative remedies through the United States Equal Employment Opportunity Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC").

Defendants contend that Plaintiff's motion should be denied (or if it is granted that dismissal should be with prejudice) as it has already expended a large amount of money and time in defending this case.

Under Rule 41(a)(2), FRCP, a district court may dismiss an action "at the plaintiff's request only by court order, on terms that the court considers proper." Rule 41(a)(2), FRCP. The Fourth Circuit has explained that "[t]he decision to grant a voluntary dismissal under Rule 41(a)(2) is a matter for the discretion of the district court, and its order will ordinarily not be reversed except for an abuse of discretion." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Id. "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986).

It is well established that prejudice to the defendant does not result from the prospect of a second lawsuit. See Vosburgh v. Indemnity Ins. Co. of North America, 217 F.R.D. 384, 386 (S.D.W.Va. Sep. 12, 2003). The Fourth Circuit, however, has found on multiple occasions that a district court does not abuse its discretion in denying a motion for voluntary dismissal if the case has advanced to the summary judgment stage and the parties have incurred substantial costs in discovery. See, e.g., Miller v. Terramite Corp., 114 Fed. Appx. 536, 540 (4th Cir. 2004)(affirming district court's decision that plaintiff's motion for voluntary dismissal was "untimely and would waste judicial resources" because the motion was filed well after discovery had closed and a dispositive order was imminent); Francis v. Ingles, 1 Fed. Appx. 152, 154 (4th Cir. 2001)(affirming district court's denial of motion to dismiss without prejudice because the "plaintiff's motion came after a lengthy discovery period and merely one week before the scheduled trial date" and "the motivation for the motion

11

appeared to be to circumvent" a discovery ruling, which counsel could have avoided "by deposing the witness within the discovery period"); Skinner v. First Am. Bank of Va., 64 F.3d 659, 1995 WL 507264, at *2-3 (4th Cir. 1995) (stating that "[t]he expenses of discovery and preparation of a motion for summary judgment may constitute prejudice sufficient to support denial of a voluntary dismissal" and noting that granting a motion to dismiss is not required to allow a party to "avoid an adverse ruling in federal court"); Sullivan v. Westinghouse Elec. Corp., 848 F.2d 186, 1988 WL 54059, at *2 (4th Cir.1988) ("Given the advanced stage of the proceedings, the district court's denial of [the plaintiff's] motion was not an abuse of discretion."). Four factors that the court can consider in deciding a motion to voluntarily dismiss an action are: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." Gross v. Spies, 133 F.3d 914, 1998 WL 8006, at *5 (4th Cir. Jan.13, 1998).

Here, Defendants would be substantially prejudiced if Plaintiff's motion to dismiss without prejudice is granted. Plaintiff delayed filing his motion to dismiss. He did not file his motion until well after the time period for discovery ended and shortly before the (extended) deadline for dispositive motions. Defendants provide that they have already expended a large amount of money and time in defending this case. Plaintiff states that he wishes to dismiss to pursue administrative remedies with the EEOC and SCHAC, but does not assert that he has taken any steps to pursue those remedies. Defendants do not argue that they are entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies, but because Plaintiff fails to show that he had a disability under the ADA and has not shown that his due process or equal protection rights were violated.

Thus, allowing dismissal to exhaust administrative remedies would not correct the deficiencies in Plaintiff's claim. It is, therefore, recommended that Plaintiff's motion to dismiss without prejudice be denied.

### **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 31) be granted. It is also recommended that Plaintiff's motion for default (Doc. 16) and his motion to dismiss (Doc. 27) be denied.

Joseph R. McCrorey
United States Magistrate Judge

June 24, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice**.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).